IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| AL WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:06-cv-631 |
| ) | |
| GENERAL MOTORS ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER

This matter is before the Court on Defendants' Motion to Transfer Venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a).  Doc. no 8.  Plaintiff opposes the motion.  Doc. no. 14.  For the reasons stated below, Defendants' motion is **DENIED.**

I. Introduction

Plaintiff Al Washington brings this employment discrimination class action against Defendants General Motors Corporation ("GM") and GM employees Larry Speicher and Roy Pikus.  Plaintiff brings claims for failure to promote and disparate treatment pursuant to 42 U.S.C. § 1981; race discrimination pursuant to 42 U.S.C. § 2000e, et seq. and Ohio Rev. Code § 4112.99; failure to promote on account of age pursuant to the Age Discrimination in Employment Act (ADEA) and Ohio Rev. Code § 4112.99; intentional infliction of emotional distress in violation of Ohio common law; and retaliation based on

race and wrongful and discriminatory termination in violation of § 1981, Title VII, and Ohio Rev. Code §§ 4112.01(A), 4112.14, and 4112.99. Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1332. Plaintiff also invokes the Court's supplemental jurisdiction over his state law claims. Plaintiff avers that venue for this action is proper in this district under 28 U.S.C. § 1391 because Defendant is doing business in Cincinnati, Ohio, and a substantial part of the events or omissions giving rise to the claims occurred in Cincinnati while Plaintiff worked or resided here.

## II. Background

Plaintiff makes the following allegations in the complaint: GM is a Delaware corporation whose corporate headquarters and principal place of business are located in Detroit, Michigan. GM has manufacturing facilities in 32 countries. Plaintiff is an African-American who is 52 years-old and a resident of Cincinnati. He began to work for GM in 1978. Defendants Speicher and Pikus are white and are residents of Naperville, Illinois. They have worked primarily in Naperville at all relevant times.

Plaintiff's first job with GM was a Level 5 position in Milwaukee, Wisconsin. He was twice promoted and achieved a Level 7 employee status. In November of 1989, Plaintiff was transferred to Cincinnati as a Level 7 employee and was named Zone Fleet Manager (a position now known as Fleet Account Executive or "FAE") for the Pontiac Division. The vast majority of FAE's had an employee status of Level 8. Beginning in 1989, Plaintiff was assigned the job duties of a Level 8 FAE. Although for more than 16 years he "exceeded the job performance of a Level 8 FAE, winning virtually every GM

Fleet Division award possible," not once during these 16 years was Plaintiff promoted to Level 8.  This failure to promote Plaintiff was the result of a pervasive and systemic pattern of racial discrimination within GM.

In 1994, during frequent conversations in 1996 between Plaintiff and his direct supervisor, and in 2000, Plaintiff was assured in response to inquiries about not being promoted that a level increase was coming if Plaintiff would only continue to work hard, be patient, and wait.  In 2000 or thereafter, when Plaintiff spoke with the Director of Fleet Operations and his successor about failing to be promoted to Level 8 status, he was told that all FAE's would be given Level 8 status.

In 1998, a white FAE who Plaintiff had been assigned to replace on some larger accounts because of the FAE's poor communication and customer relation skills was promoted from Level 7 to Level 8.  In 1999, although Plaintiff scored higher than all FAE's across the nation on a product test administered at a national training event, he was not promoted to Level 8.  In 2001, Plaintiff was given an award as the FAE who earned the highest percentage of new business in the North Central Region, but he was not promoted to Level 8.

When all FAE's were required to be tested in order to retain their positions in connection with a corporate consolidation in 2000, Plaintiff was not allowed to take the Level 8 job test, although the vast majority of the other FAE's were Level 8 employees, Plaintiff was already performing all the duties of a Level 8 FAE, all of the Level 8 FAE's were white, and Plaintiff had passed his Level 7 test and assessment of skills with ease.

3

In 2002, four new white employees were hired from outside GM, none of whom had either GM or FAE experience, and each of them was immediately given Level 8 job duties.

In 2002, Plaintiff was made the only FAE in the Cincinnati Region. Shortly thereafter, Defendant Pikus and senior management at GM hatched a scheme to take accounts from Plaintiff. The regions were arbitrarily realigned, removing portions from Plaintiff's region, giving him a much smaller base, and dramatically reducing the number of accounts for which he was responsible. Defendant Pikus then told Plaintiff that in order to be considered for a Level 8 promotion, a "new" GM policy required that an FAE have 3,000 annual sales in his accounts. Although Plaintiff had significantly more than 3,000 annual sales in his accounts prior to the realignment, he had less than that amount after the realignment through no fault of his own. This decision to take accounts from Plaintiff and then announce a new unwritten policy is an example of the pervasive pattern and practice of race discrimination at GM.

In 2003, Plaintiff had another strong year as an FAE and received numerous letters of congratulations from his supervisors and letters of appreciation from several national companies who were his customers, but still he was not promoted to Level 8. In late 2003, he was given an award as the highest achieving FAE in the North Central Region, the highest award possible for an FAE, but he was never promoted to Level 8.

In 2004, GM used another corporate consolidation as a pretext for continuing its pattern and pretext of race discrimination. During this consolidation, two of Plaintiff's

white peers with less experience and none of the accolades Plaintiff had received were promoted to Level 8, while Plaintiff remained at Level 7.

In January of 2005, Plaintiff attended a GM Regional Conference in Chicago where he met a fellow FAE, who is white, and defendant Speicher, the Regional Commercial Manager for the North Central Region. During this encounter, Speicher disparagingly called Plaintiff "boy" and told him, "We have plans for you, boy. We are going to get after you!" Two days later, Plaintiff reported the incident to his and Speicher's supervisor, Pikus, who said he had heard about the slur, but Pikus took no action to investigate or remedy the situation.

From that point on, Speicher and Pikus schemed among themselves and with others in GM management to marginalize Plaintiff by demoting him in May of 2005 to a Level 7 Commercial Sales Manager and transferring him to Naperville, Illinois, where Speicher and Pikus became his two immediate supervisors. By transferring him to the Commercial Sales Manager position, Defendants eliminated any possibility for Plaintiff to advance beyond Level 7.

During the consolidation planning in early 2005, Plaintiff learned that the FAE in Minneapolis was retiring and asked to be assigned to that position, which was a Level 8 position. Pikus instead gave the position to a less qualified white male, who had no experience as an FAE. Throughout the consolidation, white employees were treated more favorably than Plaintiff and similarly-situated black employees.

Beginning in June 2005, Speicher and Pikus escalated the plan to "get after"

Plaintiff by instituting a campaign to harass and threaten him on a regular basis. They refused to provide training to Plaintiff and engaged in a pattern of harassment that created a hostile environment. This harassment culminated in Plaintiff being threatened with termination in October 2005 in retaliation for challenging certain expense report policies that were discriminatorily applied only to him. Defendants retaliated against Plaintiff for planning to appeal their decision with respect to expenses through GM's "Open Door Policy" by giving him a written warning about his job performance. Plaintiff subsequently filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on December 7, 2005. Defendants received a copy of the charge by fax that same day. Plaintiff was then terminated for filing late expense reports.

GM's employment practices and systems discriminate against African-Americans and employees over age forty in all divisions below Level 8. These discriminatory practices are intentional and systematic in nature and adversely affect Plaintiff and other members of the class with respect to opportunities for hiring, promotion, transfer, job assignment, compensation, and other terms and conditions of employment. Level 7 is a "glass ceiling" for African-American employees and employees over the age of forty.

### III. Motion to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3)

Defendants initially move to transfer this matter to the United States District Court for the Northern District of Illinois pursuant to Fed. R. Civ. P. 12(b)(3). Defendants contend that venue is not proper in this district for Plaintiff's Title VII claims pursuant to

6

42 U.S.C. § 2000e-5(f)(3) but that venue is proper in the Northern District of Illinois. Defendants further contend that venue is proper in the Northern District of Illinois for Plaintiff's § 1981 claims pursuant to 28 U.S.C. § 1391 because the alleged unlawful conduct occurred in Illinois. Defendants also allege that the Illinois federal courts can exercise supplemental jurisdiction over Plaintiff's state law claims.

Section 2000e-5(f)(3) governs venue for claims brought under Title VII. That section provides that a Plaintiff may bring a Title VII claim in any judicial district in the State in which (1) "the unlawful employment practice is alleged to have been committed;" (2) the relevant employment records are maintained and administered; or (3) the aggrieved individual "would have worked but for the alleged unlawful employment practice . . ."

Title 28 U.S.C. § 1391(b) governs venue over a civil action brought under the court's federal question jurisdiction. Section 1391(b) provides that such an action may be brought only in "(1) a judicial district where any defendant resides, if all defendants

reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

Defendants assert that the complaint focuses on two alleged adverse actions: (1) Plaintiff's failure to be promoted since 1989, with Plaintiff identifying 2004 as the last time when less qualified peers were promoted instead of him; and (2) unwarranted criticisms of his performance by Defendants Speicher and Pikus following his transfer to Illinois in May 2005, which ultimately led to his December 2005 termination.  Defendants allege that the events referenced in the complaint that allegedly occurred while Plaintiff was employed in Cincinnati are insufficient to confer venue in this Court because the events are time-barred or are otherwise not actionable.  Defendants argue that because the last promotion Plaintiff allegedly failed to receive was in 2004, the only unlawful employment practice alleged to have occurred within Title VII's 300-day statutory limitations period is Plaintiff's December 7, 2005 termination, which occurred in Naperville.

Plaintiff argues that venue is proper in this district under Title VII. Plaintiff claims that the vast majority of the discriminatory acts against him took place during the 16 years he was employed in GM's Cincinnati office and while he lived in Cincinnati, which Plaintiff continued to do until he was terminated in December 2005.  These acts include Defendants' use of racial epithets, GM's continuous failure to promote Plaintiff going

8

back as far as 1993 and continuing to 2005, and Defendants' continuing discriminatory practices. Plaintiff avers that he was assigned to the Naperville office for only 8 months before his termination, during which time he continued to live in Cincinnati and to work out of his Cincinnati home one day a week. Plaintiff further contends that he would have continued to work in the Cincinnati area in Fleet Operations had Defendants not transferred him in furtherance of their discriminatory purposes.

Plaintiff also disputes Defendants' contention that the majority of his Title VII claims are time-barred and argues that Defendants' argument is not properly considered on a motion to transfer venue. By way of limited response, Plaintiff asserts that he may pursue his claims because GM engaged in a continuing violation as part of a long-standing and demonstrable policy of discrimination against him, and at least one of the discriminatory acts occurred within the 300-day limitations period. Plaintiff argues that his claims therefore fall under the equitable "continuing violation" exception to the 300-day limitations period, pursuant to which "discriminatory incidents which occur beyond the limitations period are actionable where a plaintiff . . . challenges not just one incident . . . but an unlawful practice that continues into the limitations period . . ." See Burzynski v. Cohen, 264 F.3d 611, 618 (6th Cir. 2001) (quoting Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992)).[1]

---

[1] Plaintiff cites Roberts v. N. Amer. Rockwell Corp., 650 F.2d 823, 827-28 (6th Cir. 1981) in support of his position, but the Supreme Court has greatly limited the viability of the continuing violation theory since the Sixth Circuit handed down its decision in Roberts. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct.

Plaintiff further argues that venue is proper in this district under § 1391. Plaintiff alleges that a substantial part of the events giving rise to his claims arose in Cincinnati, where he was employed by GM and where he lived, and the discrimination had its adverse impact upon Plaintiff here. Plaintiff alleges that he was continuously subjected to discriminatory practices during his years in the Cincinnati office, Speicher directed "racial threats" toward Plaintiff while he was still based in the Cincinnati office, Plaintiff's transfer from the Fleet Operations Division while in the Cincinnati office to Commercial Sales based in the Naperville office was the final part of Defendants' discriminatory scheme designed to set Plaintiff up for failure, and Plaintiff maintained substantial and continuous professional ties to Cincinnati.

The Court finds upon review of the record before it that the motion for change of venue pursuant to Rule 12(b)(3) is not well-taken. Plaintiff has alleged at least one unlawful discriminatory practice that occurred within 300 days of the date he filed his EEOC charge and which was committed in this district. This was Plaintiff's alleged demotion in May of 2005 to a Level 7 Commercial Sales Manager and his transfer out of his FAE position in Cincinnati, a move that Plaintiff claims eliminated the possibility of

---

2061 (2002). A plaintiff can no longer establish a continuing violation exception by proving that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period. See Sharpe v. Cureton, 319 F.3d 259, 268 (6th Cir. 2003). However, a plaintiff can establish the exception by showing that the alleged violations involve "a longstanding and demonstrable policy of discrimination" and that "some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." Id. at 268-269.

any future advancement beyond Level 7.  Not only did this job action occur in Cincinnati, but the employment records relevant to this decision are presumably located in Cincinnati, and Plaintiff may very well have continued to work in Cincinnati but for this alleged discriminatory job action.  Furthermore, Plaintiff alleges that GM had a longstanding and demonstrable policy of discrimination against African-Americans, he has made class-wide allegations of discrimination, and Defendants have not shown that Plaintiff will be unable to prove his allegations.  Plaintiff may therefore be able to establish that the continuing violation exception applies in this case and to pursue his Title VII claims based on additional discriminatory acts and omissions that occurred in this district.

As to Plaintiff's remaining federal claims, it appears from the allegations of the complaint that a substantial part of the events or omissions giving rise to those claims occurred in this district.  Accordingly, venue is proper in this district for those claims pursuant to § 1391.

IV. <u>Motion for change of venue pursuant to 28 U.S.C. § 1404(a)</u>

Defendants argue that because this action might have been brought in the Northern District of Illinois, the Court may transfer the action to that district pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The decision whether to transfer venue is within the district court's sound discretion. <u>Midwest Motor Supply Co., Inc. v. Kimball</u>, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991) (Holschuh, J.). The burden to prove that a change of venue should be granted rests with the movant. <u>Id</u>. When considering a § 1404(a) motion, a district court is to "weigh in the balance a number of case-specific factors." <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988). Some of the factors the district court should consider are "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness, which come under the rubric of "interests of justice." <u>Id</u>. at 30, 108 S.Ct. at 2244. Other factors to be considered when determining a motion to change venue are: the nature of the suit; where the operative facts occurred; the location of documentary evidence and the relative ease of access to sources of proof; the nature and materiality of testimony to be elicited from witnesses who must be transported; the respective courts' familiarity with applicable law and the condition of their dockets; and the residences of the parties. <u>Midwest Motor</u>, 761 F. Supp at 1318 (citing <u>Shapiro v.</u>

Merrill Lynch & Co., 634 F.Supp. 587, 589 (S.D. Ohio 1986) (Porter, Sr. J.).  In addition, a court may consider the parties' relative financial status.  AMF, Inc. v. Computer Automation, Inc., 532 F.Supp. 1335, 1344 (S.D. Ohio 1982) (Rice, J.).  The plaintiff's choice of forum is to be given considerable weight.  Midwest Motor, 761 F.Supp. at 1318 (citing Hanning v. New England Mut. Life Ins. Co., 710 F.Supp. 213, 214-15 (S.D. Ohio 1989) (Graham, J.)).  In deciding whether a transfer of venue is appropriate, "the balance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer."  Hanning, 710 F.Supp. at 214-15.

  Defendants argue that the factors to be considered under § 1404(a) favor transfer of this case to the Northern District of Illinois because Plaintiff worked for a GM facility in Naperville; Plaintiff was discharged for conduct occurring in Naperville; Plaintiff had transferred from Ohio to Illinois at the time he filed his EEOC complaint; the employment records relevant to the alleged unlawful employment practices are located in Naperville; the factual development of Plaintiff's claims will involve the exploration of alleged acts and omissions occurring in Illinois; the "convenience of the parties" would best be served by transferring the action to the Northern District of Illinois; the convenience of witnesses favors transfer of the case to Illinois since the two individual Defendants and other witnesses to the events leading up to Plaintiff's discharge live in the Naperville area, the likely witnesses will be other GM employees at the Naperville facility, and GM's Illinois employees would not be subject to compulsory process in this court; Plaintiff's claims are a matter of public concern to the citizens of Illinois and not to

the citizens of Ohio since the alleged incidents relating to Plaintiff's claims occurred in Naperville; it appears that Plaintiff's only ties to Ohio are that his attorney is located in Ohio and Plaintiff resides here, but the location of counsel is an improper consideration; and transfer will not prejudice Plaintiff.

Plaintiff contends that the interests of justice require that this matter be litigated in Ohio.  Plaintiff asserts that this district is the venue he chose; the vast majority of Defendants' discriminatory acts took place and adversely impacted Plaintiff while he worked here; the location of documentary evidence is only a minor consideration since the documents are within GM's possession and can be easily transported; the inconvenience to the out-of-state witnesses is insubstantial since most, if not all of them, are GM's own employees whose attendance GM can compel and finance; Plaintiff is likely to call witnesses located at GM facilities near Cincinnati; Defendants are better able to bear the costs of litigating this matter in Ohio than Plaintiff is able to bear the costs of litigating the matter in Illinois; Cincinnati has a more substantial interest in the outcome of this lawsuit than Naperville does because Plaintiff was adversely affected by Defendants' actions here in Cincinnati; and transfer would merely shift the burden of traveling to a less convenient forum from Defendants to Plaintiff.

Upon consideration of all the relevant factors, the Court exercises its discretion to deny Defendant's motion for change of venue pursuant to § 1404(a).  The operative facts occurred in both Cincinnati and Naperville; the pertinent records are presumably located in both cities (although this factor is not entitled to a great deal of weight since it should

be relatively easy for GM to transport documents from one city to the other); it appears that witnesses are located in Cincinnati, Naperville and elsewhere, and the availability of compulsory process as to GM's Illinois employees is not a concern since GM can be expected to make its own employees available to testify at trial; the parties' relative financial status weighs in favor of keeping this case in Ohio; Plaintiff is an Ohio resident and GM allegedly committed unlawful employment practices in Cincinnati, so that Ohio has an interest in the resolution of this dispute; and Plaintiff's choice of this district as the forum for his lawsuit is entitled to considerable weight.  Thus, Defendants have not carried their burden to show that the balance of convenience weighs strongly in favor of a transfer.

## V.  Conclusion

For the foregoing reasons, Defendants' motion to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404 is **DENIED**.

    **IT IS SO ORDERED**.


Date: <u>January 30, 2007</u>                                        S/ Sandra S. Beckwith
                                                                                  Sandra S. Beckwith, Chief Judge
                                                                                  United States District Court