## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| AL WASHINGTON, | ) Case No. 1:06-cv-631 |
| | ) |
| Plaintiff, | ) |
| | ) Judge Beckwith |
| | ) Magistrate Judge Black |
| v. | ) |
| | ) |
| GENERAL MOTORS CORP., et al, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF AL WASHINGTON'S MOTION TO COMPEL DISCOVERY, REQUEST FOR EXPEDITED HEARING, MEMORANDUM IN SUPPORT AND LOCAL RULE 37.2 CERTIFICATION OF COUNSEL

As more fully set forth in Plaintiff's Complaint, this is a failure to promote and wrongful discharge employment case. As a result of Defendants' intentional, systemic and systematic racial discrimination, Plaintiff was subjected to harassment, disparate treatment, retaliation and, eventually, termination.

Plaintiff Al Washington, by and through his undersigned counsel, respectfully moves the Court, pursuant to Federal Civil Rule 37, to compel Defendants to fully respond to Plaintiff's First and Second Requests for Production of Documents and Second Set of Interrogatories ("Discovery Requests")[1]. As discussed in more detail below, the Discovery Requests sought the production of documents from the Defendants that are vital to Plaintiff's right to fully develop the claims before this Court and to conduct meaningful deposition discovery. Remarkably, Defendants are stonewalling the production of very basic and core documents like job performance evaluations (called "PMPs" within General Motors). Although first requested in

---

[1] The relevant portions of the Discovery Requests at issue are attached hereto as Exhibit A.

May 2007, Defendants have not yet produced a complete set of these evaluations for the Plaintiff and other pertinent employees. Despite repeated requests, a meet-and-confer telephone conference, two deficiency letters and despite deposition testimony by Defendant's own employees that additional documents exist that have never been produced, Defendant has failed to fully respond to the Discovery Requests by producing the requested documents. The Court should order the Defendants to produce the responsive documents immediately, and the issuance of such order will not impact the current trial date set for December 8, 2008. Plaintiff respectfully requests an expedited hearing on this Motion.

Although the discovery cutoff date was April 30, 2008, discovery is continuing by agreement of counsel. For example, the parties have agreed to continue the deposition of Roy Pikus, begun on April 18, 2008, to a mutually convenient time. The parties have also agreed to take the depositions of O.J. Adkins, Jim Bunnell and a Rule 30(b)(6) witness at a mutually convenient time. Finally, as a result of the "meet-and-confer" conference and follow-ups, counsel for Defendants was still producing documents after the discovery cutoff date which were requested in May 2007, January 2008 and March 2008. That production still is not complete. The lack of good faith production has necessitated this Motion to Compel and memorandum in support thereof.

In further support of this Motion to Compel, Plaintiff states as follows:

1. Once the initial pleadings and proceedings on Defendant's request to transfer venue were completed, Plaintiff sought discovery on the merits through its Discovery Requests served on Defendants in May 2007, January 2008 and March 2008. Plaintiff's Discovery Requests sought clearly relevant and discoverable documents from Defendants to enable Plaintiff to fully evaluate the claims in this action, including:

2

a) the complete personnel files for various individuals identified in Plaintiff's requests, such as Defendants Speicher and Pikus, other supervisory employees of GM, and all employees similarly situated to Mr. Washington;

b) all documents in the possession of Defendants which, in any way, relate to Mr. Washington, including all sales data, all performance evaluations, all handwritten documents and any other document involving Mr. Washington which should properly be made part of his personnel file;

c) documents prepared by GM regarding the race of its employees;

d) documents relating to wage or salary specifications, schedules and guidelines used by GM for its employees;

e) documents setting forth standards, procedures and factors considered by GM in setting salaries and raises for its employees; and

f) documents identified through deposition testimony of GM's 30(b)(6) witness, Deborah Voyt, relating to GM practice and procedure, which include documents relating to a compensation planning tool, delineating the criteria for pay increases at GM, and documents or worksheets utilized by GM to identify high and low performers.

2. While Defendants provided some documents which partially responded to some of the above requests, the Defendants' piecemeal production was grossly incomplete and inadequate. Plaintiff repeatedly requested Defendants to supplement their production. The parties held a meet-and-confer telephone conference on April 9, 2008 to discuss the deficient responses. Plaintiff followed up with a deficiency letter on April 23, 2008. Plaintiff notified Defendants in writing on May 2, 2008 of his intention to file a Motion to Compel, again listing

3

the discovery deficiencies. Even so, Defendants have refused to produce any further documents which are known to be in their possession.

3.      As an illustration of Defendants' intentional obfuscation of the discovery process, Plaintiff has repeatedly requested that complete personnel files be produced for several employees of GM, including Mr. Washington. In response, Defendants have produced wholly incomplete personnel files missing core documents, such as Performance Management Feedback reports ("PMPs") and other similar performance evaluations that are required to be maintained in every employee's personnel file pursuant to GM policy, practice and procedure.

4.      The deposition testimony of Defendants Speicher and Pikus, and the Rule 30(b)(6) deposition testimony of GM employee Mr. John Cryer conclusively demonstrate GM's practice and procedure of maintaining PMPs and performance evaluations in an employee's personnel file. Thus, Mr. Speicher testified:

> Q:    So the final PMP should be in the personnel folder, correct?
>
> A:    Correct.
>
> Q:    Can you explain to me – we requested in this case your personnel folder, and it contains no PMPs. Can you explain that to me?
>
> A:    No. I don't know; I don't know. I cannot answer that.[2]

Similarly, Mr. Pikus testified:

> Q:    Is it GM policy that the PMPs go into the personnel file?
>
> A:    Yes.
>
> Q:    So you would expect in every personnel file to have all of the employees' PMPs, wouldn't you?

---

[2] Speicher Deposition, pg. 70, attached as Exhibit B.

4

A: There should be a xerox copy of the file, the PMP, and there should be a copy of the PMPs in HR's file. Again, that's an annual activity.

Q: That's a very important function vis-à-vis the employee and General Motors; isn't that right?

A: Yes. Uh-huh.[3]

Mr. Cryer, a Rule 30(b)(6) witness designated by GM to testify regarding personnel files and records maintained by GM, testified:

Q: Who would have possession, then, of Mr. Washington's PMPs?

A: At this point in time?

Q: Um-hmm.

A: My assumption is they would have been in the personnel file because he is a terminated employee.

Q: Do you have an explanation as to why it's not in that personnel file?

A: No, I don't.

Q: Would it be unusual for the PMPs of a terminated employee not to be in the personnel file?

A: In my professional opinion, yes.[4]

5. Despite the above deposition testimony demonstrating GM policy, no PMPs or other performance related documents were included in any personnel file produced by Defendants. Furthermore, in addition to PMPs, written GM policy[5] states that the following items are also to be included in a complete personnel file: summary sheets of assessment processes; formal notices of warning, suspension, discipline, or termination; and any document

_____

[3] Pikus Deposition, pg. 85-86, attached as Exhibit C.

recording a significant event involving an employee that should properly be made a part of the employee's record. Yet none of the above items were included in any personnel file produced by Defendants. Defendants did separately produce some PMPs for several individuals including Mr. Washington. However, even those PMPs are incomplete. For instance, no performance evaluations have been produced for Mr. Washington prior to 1999, and none have been produced for any other employee prior to 2004.

6. The deposition testimony of GM's Rule 30(b)(6) witnesses also revealed the existence of non-privileged and relevant documents in GM's possession that were subsequently requested and were never produced. For instance, the Rule 30(b)(6) deposition of Ms. Deborah Voyt, who was designated by GM to testify on the topic of GM employee compensation, revealed GM's utilization of a "compensation planning tool" which delineates the criteria for pay increases within GM.[6] This document is highly relevant because, while Defendants claim that Mr. Washington's performance allegedly declined from 1999-2005, he still received above average pay increases and merit bonuses during that entire timeframe, which is patently inconsistent with declining performance. Even Defendants' counsel was well aware of the relevancy of such documents, evidenced by their commitment to produce all documents related to the compensation planning tool at the meet-and-confer conference on April 9, 2008. However, none have been produced to date.

7. Moreover, Ms. Voyt also testified to the existence of worksheets utilized by GM in identifying high performing and low performing employees within each functional area of GM.[7] Again, the relevancy of this document is evident because if Mr. Washington's

---

[4] Cryer Deposition, pgs. 18-19, attached as Exhibit D.
[5] GM03697-GM03698, attached as Exhibit E.
[6] Voyt Deposition, pgs. 22-24, attached as Exhibit F.
[7] Voyt Deposition, pgs. 31-33, attached as Exhibit G.

6

performance had been declining since 1999, surely he would have been identified as a low performing employee by GM. However, even in light of Ms. Voyt's honest, clear and straightforward testimony, GM denies the existence of such documents, and therefore refuses to produce them.

8.      The depositions of Defendants Speicher and Pikus also revealed that each had made several handwritten notes on separate copies of the Complaint in this matter, which were not produced even though they were specifically requested through discovery. Defendants only recently submitted a privilege log[8] claiming that the notes, notes not made in anticipation of litigation, made by the Defendants on their own and without the direction of counsel, are somehow work product. Clearly, these notes are not work product. The notes were made voluntarily by non-attorneys, relating to the facts of the case. The notes were not made in anticipation of litigation and were not prepared for their attorney. The notes, therefore, do not qualify for protection under Fed. R. Civ. P. 26(b)(3). Moreover, the work product doctrine does not protect from disclosure the underlying facts known by the party or their counsel, even if acquired in anticipation of litigation. Zigler v. Allstate Ins. Co., 2007 U.S. Dist. LEXIS 26117 *9 (N.D. Ohio 2007); National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992); Vardon Golf Co., Inc. v. Karsten Mfg. Corp., 213 F.R.D. 528, 534 (N.D. Ill 2003). Therefore, since these notes properly relate to the underlying facts of this case, they are not protected and must be produced.

9.      Even if the notes were considered work product, they would be considered unprivileged fact or ordinary fact work product. In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986). Ordinary or unprivileged fact work product is written or oral information

[8] Attached hereto as Exhibit H.

7

transmitted to the attorney, as conveyed by the client, and receives a greatly reduced level of protection from discovery. Allstate Ins. Co. at 2007 U.S. Dist. LEXIS 26117 *9. Plaintiff must simply show a substantial need or undue hardship of obtaining equivalent materials in order to defeat the very limited privilege. Id. at *7. Indeed, the Plaintiff's need for the notes is substantial, and clearly, their equivalent cannot be obtained by other means. Nowhere else can Plaintiff obtain such a recitation of the underlying factual information as provided in the notes at issue. Surely nothing could be more vital to Plaintiff than to be made fully aware of the underlying facts and the Defendants' notes are the best source for this information.

10.    Finally, in response to Plaintiff's second set of Interrogatories, Defendants invoke Fed. R. Civ. P. 33(d) for a majority of their responses and further state that they "will provide responsive documents regarding employees who are similarly situated to plaintiff in its possession, custody or control." However, these "responsive documents" were not produced with the accompanying production, no date certain was given for their production and Defendants do not state that they will make the responsive documents available for inspection. Defendants simply respond with an open-ended commitment that they "will provide responsive documents" without any further elaboration or accompanying production. Furthermore, to properly invoke Fed. R. Civ. P. 33(d) Defendants were required to "specify the records from which the answer may be derived or ascertained," which Defendants did not do.    The Defendants' open-ended, deficient and inadequate responses to Plaintiff's second set of Interrogatories require supplementation.

11.    The numerous documents which Defendants are refusing to produce are clearly non-privileged and relevant documents that go to the very heart of the issues to be presented to the jury in this action. The Defendants' inadequate production has unfairly and unnecessarily

8

inhibited Plaintiff's ability to continue with meaningful deposition discovery and to fully explore the claims before this Court.

12.     For the foregoing reasons, the Court should enter an Order requiring Defendants to fully respond to the Discovery Requests, including producing every document responsive to those requests, within fifteen days. Plaintiff respectfully requests an expedited hearing on this Motion.

Respectfully submitted,

BLANK ROME LLP

  /s/ Michael L. Cioffi
Nathaniel R. Jones (0026866)
Michael L. Cioffi (0031098)
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Telephone:     (513) 362-8700
Facsimile:     (513) 362-8787
jones-n@blankrome.com
cioffi@blankrome.com
Counsel for Plaintiff

## Local Rule 37.2 Certification of Counsel

I, Michael L. Cioffi, hereby certify that extrajudicial means, as set forth above, were attempted by the parties to resolve their differences prior to filing this motion.

  /s/ Michael L. Cioffi
Michael L. Cioffi

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2008, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following: Michael S. Glassman, Esq., Counsel for Defendants General Motors, Larry Speicher,

and Roy Pikus, and I hereby certify that I have mailed by United States Postal Service the

document to the following non CM/ECF participants:

David C. Vogel, Esq.
Lathrop & Gage, L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108

/s/ Michael L. Cioffi
Counsel for Plaintiff

**A**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

AL WASHINGTON, ) Case No. 1:06-cv-631
)
      Plaintiff, ) Judge Beckwith
)
vs. )
)
GENERAL MOTORS CORPORATION, et al, )
)
      Defendants. )
)

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS FROM DEFENDANTS

Defendants General Motors Corporation ("GM"), Larry Speicher and Roy Pikus, pursuant to Federal Rule of Civil Procedure 34, makes the following answers and objections to Plaintiff's First Set of Requests for Production of Documents from Defendants.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Defendants object to plaintiff's definitions and instructions as unduly burdensome and unreasonable. Plaintiff's definitions and instructions are two pages long, single-spaced, and contain a multitude of subparts, definitions and instructions that are by their nature designed to place undue hardship and burden on Defendants and impose obligations on Defendants far greater than those established by the Federal Rules of Civil Procedure. For example, plaintiff's definition of "Defendants" includes any wholly-owned subsidiary of GM over the past 17 years although no such subsidiary is a party to this action and further, no such subsidiary is alleged to have taken any action toward plaintiff. Plaintiff likewise defines "Defendants" to broadly include all "agents, employees and representatives" of Defendants, without regard to whether Defendants had control over such individuals and further, again, establishes a 17 year period. Without waiving these objections, Defendants will respond to these requests without regard to

1

10. All complaints filed on or after December 1, 1995 with the United States Department of Labor, the Equal Employment Opportunity Commission, the Ohio Civil Rights Commission, or any other governmental agency, including any civil action filed in any state or federal court, charging Defendants or any of GM's divisions with race or age discrimination.

**RESPONSE:** Defendants object to this request as overly broad and not reasonably calculated to lead to the discovery of relevant evidence in that information regarding other complaints has no bearing on plaintiff's highly individualized claims. Defendants further object to this request to the extent that the information sought is public and the burden of obtaining such information is substantially the same for plaintiff as for Defendants. Defendants further object to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information over a twelve year time period regarding employees who worked in departments other than that in which plaintiff worked under supervisors other than those who made any employment decisions regarding plaintiff. Defendants further object to this request as an invasion of privacy of those employees who have brought complaints and filed charges with state, federal or local discrimination agencies and lawsuits in state and federal court, and as contrary to the principles set forth by the United States Supreme Court in *EEOC v. Associated Dry Good Corp.*, 449 U.S. 590 (1981) and states that the privacy interests of the individuals who brought any such complaints outweigh the probative value of the requested information. Subject to and without waiving their objections, Defendants state they will produce plaintiff's Charge of Discrimination.

11. All statistics and other documents prepared by the Defendants regarding the race

of their employees.

**RESPONSE:** Defendants object that this request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Defendants will make available for inspection and copying records maintained at the VSSM north central region by O.J. Adkins in 2005. Defendants further refer plaintiff to the work history reports produced as these reports reflect the races of the Level 7 and 8 VSSM employees.

12. The documents for the Period which indicate names, race, ages, dates of birth, job

titles, wages and salary categories, and places of employment of Defendants' employees working

in or for GM as LEVEL 7 or LEVEL 8 employees.

**RESPONSE:** Defendants object to this request because it requests information not reasonably calculated to lead to the discovery of admissible evidence, including that it requests information over a sixteen year period, for years in which plaintiff was no longer employed by GM, for years in which plaintiff is barred from presenting evidence due to the applicable statute of limitations and administrative filing requirements limiting recoverable events to the 300 day

6

period preceding the filing of a charge of discrimination, and requests information concerning persons not similarly situated to plaintiff. For example, each of GM's manufacturing facilities have Level 7 and/or 8 positions, but the identity of persons holding those positions has no bearing on plaintiff's claims, as he did not hold an even remotely similar position and would not have been qualified to do so given his qualifications and background. Defendants further object to the request because it constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Subject to and without waiving their objections, Defendants state that they will make available for inspection and copying the work history reports for Level 7 and Level 8 VSSM employees from 1999 to 2005 subject to an appropriate protective order.

13. The documents indicating the names, race, job titles, and dates of birth of all

persons performing (a) any duties formerly performed by Plaintiff, and (b) any duties similar to

the duties formerly performed by Plaintiff.

**RESPONSE:** Defendants object that this request is overly broad, vague and ambiguous because it seeks documents regarding duties formerly performed by plaintiff throughout his lengthy career with plaintiff. The request further fails to define the term "any duties similar to the duties former employed by Plaintiff" with sufficient particularity. Subject to and without waiving their objections, Defendants state they will produce the work history reports for Richard Kruzel, Lee Kirby, Jeff Lewellen, Michael Wilson, and Clifford Forsythe subject to a Protective Order.

14. All documents which provide descriptions of job positions, job titles used, or

other summaries of work assignments for Defendants' employees working in or for GM as

LEVEL 7 or LEVEL 8 employees.

**RESPONSE:** Defendants object to this request because it requests information not reasonably calculated to lead to the discovery of admissible evidence, including that it requests information regarding current Level 7 and 8 employees and therefore for years in which plaintiff was no longer employed by GM, and further requests information concerning persons not similarly situated to plaintiff. For example, each of GM's manufacturing facilities have Level 7 and/or 8 positions, but the identity of persons holding those positions has no bearing on plaintiff's claims, as he did not hold an even remotely similar position and would not have been qualified to do so given his qualifications and background. Subject to and without waiving their objections, Defendants state that they will make available for inspection and copying the job descriptions for GM's Commercial Sales Managers and Fleet Account Executives.

15. All personnel records, including but not limited to documents relating to any

disciplinary or adverse personnel actions taken by Defendants, or for the following employees:

Larry Speicher, Roy Pikus, and Jim Bunnell.

7

**RESPONSE:** Defendants object to this request because it requests information not reasonably calculated to lead to the discovery of admissible evidence and constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Defendants further object to this request as overly broad, vague and ambiguous in that plaintiff does not define the term "all personnel records" with sufficient particularity. Subject to and without waiving their objections, Defendants state they will produce the personnel files of Speicher, Pikus and Bunnell subject to a Protective Order.

16.     All documents setting forth the guidelines for those documents which should be

included or maintained in an employee's personnel file.

**RESPONSE:** Defendants object that this request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

17.     All documents, including personnel files and any other files, a substantial portion

of which concern any of the following persons, irrespective of the date or period:

- (A)     Plaintiff
- (B)     Larry Speicher
- (C)     Roy Pikus
- (D)     Jim Bunnell

**RESPONSE:** Defendants object to this request because it requests information not reasonably calculated to lead to the discovery of admissible evidence and constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Defendants further object to this request as overly broad, vague and ambiguous in that the request is unlimited in time and scope and plaintiff also does not define the term "all documents" and "any other files, a substantial portion of which concern . . ." with sufficient particularity. Defendants further object to the extent this request seeks documents protected by the attorney-client and work product privileges. Subject to and without waiving their objections, Defendants state they will produce the personnel files of Speicher, Pikus and Bunnell subject to a Protective Order. Defendants will further make responsive non-privileged documents regarding plaintiff available for inspection and copying.

18.     All documents, including all correspondence and investigations between

Defendants, their employees and representatives, including investigations by Defendants'

attorneys, referring to or relating to Plaintiff, the termination of Plaintiff, and/or to the events

leading to the termination of Plaintiff.

8

**RESPONSE:** Defendants object that this request seeks information protected by the attorney-client and work product privileges. Defendants further object that this request is overly broad, vague and ambiguous. For example, its seeks documents "referring to or relating to plaintiff" but any number of documents could be deemed to refer or relate to plaintiff or "the events leading to" his termination in some general way, but which would not lead to the discovery of admissible evidence. Subject to and without waiving their objections, Defendants state they will make non-privileged documents available for inspection and copying.

19. All wage or salary specifications, schedules and guidelines used by Defendants

for their employees.

**RESPONSE:** Defendants object that this request is overly broad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request as overly broad, vague and ambiguous in that plaintiff does not define the term "salary specifications, schedules and guidelines" with sufficient particularity. Subject to and without waiving their objections, Defendants state they will make responsive documents available for inspection and copying, including documents evaluating plaintiff's performance and the salary ranges for Level 7 and 8 VSSM employees from 1999 to 2005, to the extent such documents exist, subject to a protective order.

20. All documents setting forth standards, procedures, and factors considered in

setting salaries and raises.

**RESPONSE:** Defendants object that this request is overly broad, unduly burdensome and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request as overly broad, vague and ambiguous in that plaintiff does not define the term "standards, procedures and factors considered" with sufficient particularity. Subject to and without waiving their objections, Defendants state they will make responsive documents available for inspection, including documents evaluating plaintiff's performance, the performance management feedback appraisal form and the salary ranges for Level 7 and 8 VSSM employees from 1999 to 2005, to the extent such documents exist, subject to a protective order.

21. All documents which refer to, relate to, or describe any pension, stock, stock

option, bonus plan, and/or profit sharing plans applicable to Plaintiff during the Period.

**RESPONSE:** Defendants object that this request is overly broad and unduly burdensome because it seeks information over the course of plaintiff's career. Subject to and without waiving its objections, Defendants state they will make responsive documents concerning plaintiff's benefits at the time of his termination available for inspection and copying. Plaintiff may obtain additional information about his benefits by contacting Fidelity Investments, P.O. Box 770003, Cincinnati, Ohio 45277.

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| AL WASHINGTON, | ) Case No. 1:06CV631 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL MOTORS CORPORATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendants General Motors Corporation, Larry Speicher and Roy Pikus, pursuant to Fed.

R. Civ. P. 34, provide the following responses to plaintiff Al Washington's Second Set of

Requests for Production of Documents:

**DOCUMENT REQUEST NO. 1:** All documents, including personnel files and any

other files, a substantial portion of which concern any of the following persons, irrespective of

the date or period:

| | | | | |
|---|---|---|---|---|
| (A) | Eric Raich· | (I) | Mr. Corrigan | (Q) Johnny Jenkins · |
| (B) | L.V. Turner· | (J) | Mr. Sturgis | |
| (C) | Jeffrey Haguelbag | (K) | Mr. Mellon (James) | |
| (D) | Clifford Forsythe | (L) | Mr. Resinger | |
| (E) | Lee Turner • | (M) | Doug Doittrich· | |
| (F) | June Reilly/Riky | (N) | Dave Hazelhorst | |
| (G) | Kermit Kelly· | (0) | Bob Lawler. | |
| (H) | Ray Nathan. | (P) | Betsy Perkins, | |

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly
broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant
evidence to the extent it calls for the production of "[a]ll documents, including . . . any . . . files,
a substantial portion of which concern any of the" seventeen individuals identified in this
request, "irrespective of the date or period" in that it is unlimited in time and fails to describe the

**DOCUMENT REQUEST NO. 12:** All documents relating to applicant flow data for the

promotion of minorities by Defendants as described in Wendy Soubel's November 14, 2007 30

(b)(6) deposition on page 29 at lines 13-25.

**RESPONSE:** Defendants object to this request as incapable of response in that
page 39 of Ms. Soubel's deposition makes no mention of applicant flow data for the promotion
of minorities.

**DOCUMENT REQUEST NO. 13:** All documents relating to Defendant's termination

policy as described in Wendy Soubel's November 14, 2007 30(b)(6) deposition on page 42 at

lines 17-25.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly
broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant
evidence to the extent it calls for the production of "[a]ll documents relating to" GM's policy
related to termination in that it is unlimited in time and fails to describe the requested documents
with reasonable particularity. Subject to and without waiving these objections, defendants will
make available for inspection and copying at a time and place convenient to the parties relevant
portions of its salaried policy manual and other documents related to its policy pertaining to
termination of salaried employees.

**DOCUMENT REQUEST NO. 14:** All documents relating to the compensation

planning tool which delineates the criteria for pay increases as described in Deborah Voyt's

November 14, 2007 30(b)(6) deposition on pages 22-24 at lines 17-25, 1-25, 1-7.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly
broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant
evidence to the extent it calls for the production of "[a]ll documents relating to" the
compensation planning tool described in Ms. Voyt's deposition in that it is unlimited in time and
fails to describe the requested documents with reasonable particularity. Subject to and without
waiving these objections, defendants will make available for inspection and copying at a time
and place convenient to the parties copies of the compensation planning tool to which Ms. Voyt
referred in her deposition which are in its possession or custody.

**DOCUMENT REQUEST NO. 15:** All documents relating to the safeguards that

employees compensations are not lower because of race including but limited to the

compensation planning report as described in Deborah Voyt's November 14, 2007 30(b)(6)

deposition on pages 28-30 at lines 16-25, 1-25, 1.

-5-

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it calls for the production of "[a]ll documents relating to" compensation safeguards to avoid racial discrimination in that it is unlimited in time and fails to describe the requested documents with reasonable particularity. Defendants further object to this request as not reasonably calculated to lead to the discovery of relevant evidence in that plaintiff does not have a claim for disparate compensation based on race.

**DOCUMENT REQUEST NO. 16:** All documents relating to the worksheets that

identify high performers through low performers as described in Deborah Voyt's November 14,

2007 30(b)(6) deposition on pages 3 1-33 at lines 11-25, 1-25, 1-16.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it calls for the production of "[a]ll documents relating to" worksheets describing high and low performers in that it is unlimited in time and fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, defendants state that the Vehicle Sales, Service and Marketing group did not utilize worksheets to identify high and low performers during plaintiff's employment, and therefore has no documents responsive to this request.

**DOCUMENT REQUEST NO. 17:** All documents in the possession of Larry Speicher

that pertain to Al Washington.

**RESPONSE:** Defendants object to this request to the extent it may be interpreted as calling for the production of documents protected by the attorney-client or work product privileges. Subject to and without waiving these objections, defendants will make the requested documents available for inspection and copying at a time and place convenient to the parties.

**DOCUMENT REQUEST NO. 18:** All documents in the possession of Roy Pikus that

pertain to Al Washington.

**RESPONSE:** Defendants object to this request to the extent it may be interpreted as calling for the production of documents protected by the attorney-client or work product privileges. Subject to and without waiving these objections, defendants will make the requested documents available for inspection and copying at a time and place convenient to the parties.

**DOCUMENT REQUEST NO. 19:** All documents in the possession of Jim Bunnell that

pertain to Al Washington.

**RESPONSE:** Defendants object to this request to the extent it may be interpreted as calling for the production of documents protected by the attorney-client or work product

privileges. Subject to and without waiving these objections, defendants will make the requested documents available for inspection and copying at a time and place convenient to the parties.

**DOCUMENT REQUEST NO. 20:** All documents in the possession of O.J. Atkins that

pertain to Al Washington.

**RESPONSE:** Defendants object to this request to the extent it may be interpreted as calling for the production of documents protected by the attorney-client or work product privileges. Subject to and without waiving these objections, defendants will make the requested documents available for inspection and copying at a time and place convenient to the parties.

Respectfully submitted,

David C. Vogel (Mo. Bar No. 45937)
**(Admitted Pro Hac Vice)**
Lathrop & Gage L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Telecopier: (816) 292-2001

Michael S. Glassman
Dinsmore & Shohl
1900 Chemed Center
225 E. Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8255
michael.glassman@dinslaw.com

ATTORNEYS FOR DEFENDANTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| AL WASHINGTON, | ) Case No. 1:06CV631 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GENERAL MOTORS CORPORATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DEFENDANTS' ANSWERS AND OBJECTIONS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendants General Motors Corporation, Larry Speicher and Roy Pikus, pursuant to Fed.

R. Civ. P. 34, provide the following answers and objections to plaintiff Al Washington's Second

Set of Interrogatories:

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Defendants object to plaintiff's definitions and instructions as unduly burdensome and

unreasonable. Plaintiff's definitions and instructions are three pages long, single-spaced, and

contain a multitude of subparts, definitions and instructions that are by their nature designed to

place undue hardship and burden on Defendants and impose obligations on Defendants far

greater than those established by the Federal Rules of Civil Procedure. For example, plaintiff's

definition of "Defendants" includes any wholly-owned subsidiary of GM over the past 17 years

although no such subsidiary is a party to this action and further, no such subsidiary is alleged to

have taken any action toward plaintiff. Plaintiff likewise defines "Defendants" to broadly

include all "agents, employees and representatives" of Defendants, without regard to whether

Defendants had control over such individuals and further, again, establishes a 17 year period.

Other times, plaintiff attempts to establish definitions which are inconsistent with the applicable law. For example, plaintiff claims the term "management level employees" includes all employees who earn more than $30,000 per year, which would include almost all of GM's hourly workforce at GM's manufacturing facilities. Clearly, salary alone does not establish one's management authority to bind GM. Defendants further object to plaintiff's interrogatories they greatly exceed the allowable number of interrogatories set forth in Federal Rule of Civil Procedure 33 in that they contain multiple subparts and improperly request a multitude of additional voluminous information in they "definitions and instructions" section. Without waiving these objections, Defendants will respond to these interrogatories without regard to the definitions and instructions, based on the reasonable and ordinary meaning of the words used, as it understands them, and in accordance with the applicable rules.

## GENERAL OBJECTIONS

Defendants object to all of plaintiff's interrogatories to the extent they may be interpreted as calling for documents pertaining to GM facilities other than the GM facilities where plaintiff was employed, and unless otherwise noted, Defendants have limited their answers accordingly.

Defendants further object to plaintiff's interrogatories they greatly exceed the allowable number of interrogatories set forth in Federal Rule of Civil Procedure 33 in that this is the second set of interrogatories served on Defendants by plaintiff, bringing the grand total of interrogatories propounded by plaintiff, not including subparts, to 37. Without waiving these objections, Defendants will respond to these interrogatories without regard to the definitions and instructions, based on the reasonable and ordinary meaning of the words used, as it understands them, and in accordance with the applicable rules.

**INTERROGATORY NO. 1:** Identify all employees of GM, including their age, race and gender, who have been terminated by GM between January 1999 and December 2005

-2-

for failure to timely and accurately complete "administrative tasks", such as the filing of expense

reports, WRT mileage logs, and weekly itineraries.

**ANSWER:** Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object to this interrogatory as irrelevant, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that it asks defendants to identify "all employees of GM, including their...gender" who "have been terminated...for failure to timely and accurately complete 'administrative tasks,' 'filing of expense reports,' 'WRT mileage logs,' and 'weekly itineraries,'" which could arguably include employees in facilities where plaintiff has never worked, who have different employment histories and/or hold different positions than plaintiff and who work for different supervisors than plaintiff. Gender is not and never has been an issue in this lawsuit. Further, the identification of such employees, without regard to whether those employees are similarly situated to plaintiff, is overly broad, unduly burdensome, irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the interrogatory because it constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Without waiving these objections and subject thereto, defendants state that the information requested may be derived or ascertained from business records of GM, and the burden of deriving or ascertaining this information is substantially the same for plaintiff as for defendants. Therefore, defendants invoke Fed. R. Civ. P. 33(d), and will provide responsive documents regarding employees who are similarly situated to plaintiff in its possession, custody or control. Defendants also refer plaintiff to responsive documents already produced in this matter.

**INTERROGATORY NO. 2:** For each employee identified in response to

Interrogatory 1 above, please identify the specific reason or reasons given by GM that the

employee was terminated.

**ANSWER:** Defendants adopt and incorporate their answer and objections to Interrogatory No. 1 as if fully set forth herein.

**INTERROGATORY NO. 3:** Identify all employees of GM, including their age,

race and gender, who received a written reprimand by GM between January 1999 and December

2005 for failure to timely and accurately complete "administrative tasks", such as the filing of

expense reports, WRT mileage logs, and weekly itineraries.

**ANSWER:** Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants also object that this interrogatory is vague and ambiguous with respect

-3-

to the phrase "written reprimand." Further objecting, this interrogatory is irrelevant, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that it asks defendants to identify "all employees of GM, including their...gender" who "received a written reprimand...for failure to timely and accurately complete 'administraive tasks,' 'filing of expense reports,' 'WRT mileage logs,' and 'weekly itineraries,'" which could arguably include employees in facilities where plaintiff has never worked, who have different employment histories and/or hold different positions than plaintiff and who work for different supervisors than plaintiff. Gender is not and never has been an issue in this case. Further, the identification of such employees, without regard to whether those employees are similarly situated to plaintiff, is overly broad, unduly burdensome, irrelevant and is not reasonably calcuated to lead to the discovery of admissible evidence. Defendants further object to the interrogaory because it constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Without waiving these objections and subject thereto, Defendants state that the information requested may be derived or ascertained from business records of GM, and the burden of deriving or ascertaining this information is substantially the same for plaintiff as for defendants. Therefore, defendants invoke Fed. R. Civ. P. 33(d), and will provide responsive documents regarding employees who are similarly situated to plaintiff in its possession, custody or control. Defendants also refer plaintiff to responsive documents already produced in this matter.

**INTERROGATORY NO. 4:**    Identify all employees of GM, including their age

and gender, who were promoted to Level 8 between the January 1999 and December 2005.

**ANSWER:**    Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that it asks defendants to identify "all employees of GM...who were promoted to Level 8," which could arguably include employees in facilities where plaintiff has never worked, who have different employment histories and/or hold different positions than plaintiff and who work for different supervisors than plaintiff. The identification of such employees, without regard to whether those employees are similarly situated to plaintiff, is overly broad, unduly burdensome, irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. The identity of those who achieved a Level 8 position has no bearing on plaintiff's claims, as he did not hold an even remotely similar position and would not have been qualified to do so given his qualifications and background. Defendants further object to the interrogatory because it constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Without waiving these objections and subject thereto, Defendants state that the information requested may be derived or ascertained from business records of GM, and the burden of deriving or ascertaining this information is substantially the same for plaintiff as for defendants. Therefore, defendants invoke Fed. R. Civ. P. 33(d), and will provide responsive documents regarding employees who are similarly situated to plaintiff in its possession, custody or control. Defendants also refer plaintiff to responsive documents already produced in this matter.

-4-

**INTERROGATORY NO. 5:**      Identify the individual within GM who is most

knowledgeable about the standard contents of GM personnel files.

**ANSWER:**      Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object that this interrogatory is vague and ambiguous with respect to the phrase "knowledgeable about the standard contents of GM personnel files" which, by its very nature, renders this interrogatory virtually impossible for defendants to answer. Without waiving these objections and subject thereto, and as defendants understand this interrogatory, defendants state that the individual with the most knowledge concerning GM's personnel file policies and procedures is John Cryer, Senior Policy Consultant in the Policy Center of Expertise, who may be contacted through defense counsel only.

**INTERROGATORY NO. 6:**      Identify the individual(s) who prepared Defendants

Responses to Plaintiff First and Second Requests for Production of Documents.

**ANSWER:**      Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object that this interrogatory seeks information protected by the attorney-client and work product privileges. Subject to and without waiving their objections, Defendants state the responses to Plaintiff's First and Second Requests for Production of Documents were prepared by defense counsel, with assistance from Larry Speicher, Regional Commercial Manager, Roy Pikus, Regional Fleet and Commercial Manager, O.J. Adkins, Regional Human Resources Manager and John Cryer, Senior Policy Consultant in the Policy Center of Expertise. Mr. Speicher, Mr. Pikus, Mr. Adkins' business address is:

> General Motors Corporation
> VSSM North Central Regional Office
> 387 Shuman Boulevard, Suite 300E
> Naperville, Illinois 60563

Mr. Cryer's business address is:

> General Motors Corporation
> 300 Renaissance Center
> Detroit, MI 48265-3000

They may be contacted through defense counsel only.

**INTERROGATORY NO. 7:**      Identify the individual within GM who is most

knowledgeable about the Captura expense reporting policy as set forth on GM production nos.

0092 and 0572-0590.

**ANSWER:** Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object to the phrase "most knowledgeable" as it is vague and ambiguous. Without waiving this objection and subject thereto, and as defendants understand this interrogatory, defendants will supplement this answer once they have gathered responsive information.

**INTERROGATORY NO. 8:** For each month between January 1999 to December 2005, identify every employee of GM who received a 30-day Reminder Notice of an aging Captura expense report. For each employee so identified, state his or her full name, home and business telephone number.

**ANSWER:** Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that it asks defendants to identify "every employee of GM who received a 30-day Reminder Note of an aging Captura expense report," which could arguably include employees in facilities where plaintiff has never worked, who have different employment histories and/or hold different positions than plaintiff and who work for different supervisors than plaintiff. The identification of such employees, without regard to whether those employees are similarly situated to plaintiff, is overly broad, unduly burdensome, irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence in that GM has thousands of employees who utilize the Capture expense reporting system. Defendants further object to the interrogatory because it constitutes an unnecessary and unwarranted invasion into personal and confidential information and personnel records of other employees having no bearing in the instant lawsuit. Without waiving these objections and subject thereto, Defendants state that the information requested may be derived or ascertained from business records of GM, and the burden of deriving or ascertaining this information is substantially the same for plaintiff as for defendants. Therefore, defendants invoke Fed. R. Civ. P. 33(d), and will provide responsive documents regarding employees who are similarly situated to plaintiff in its possession, custody or control, or that it is reasonably able to obtain through the Captura or Lotus Notes systems. Defendants also refer plaintiff to responsive documents already produced in this matter.

**INTERROGATORY NO. 9:** For each month between January 1999 to December 2005, identify every employee of GM who received a 60-day Reminder Notice of an aging Captura expense report transaction. For each employee so identified, state his or her full name, home and business telephone number.

**ANSWER:** Defendants object to this interrogatory as overly broad and unduly burdensome in that this interrogatory exceeds the number of allowable interrogatories under Fed. R. Civ. P. 33. Defendants further object to this interrogatory as overly broad, unduly

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AL WASHINGTON,               )    Case No. 1:06CV631

                  )

        Plaintiff,          )

                  )

    v.                  )

                  )

GENERAL MOTORS CORPORATION,  )

et al.,                 )

                  )

        Defendants.       )

                  )

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S
## THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendants General Motors Corporation, Larry Speicher and Roy Pikus, pursuant to Fed. R. Civ. P. 34, provide the following responses and objections to plaintiff Al Washington's Third Set of Requests for Production of Documents:

**General Objection:** Defendants object to all of the requests set forth by plaintiff herein as untimely. In support of this objection, defendants state that, pursuant to the Court's Scheduling Order, all discovery in this matter was to be served in sufficient time to be completed by the discovery deadline of April 30, 2008. Plaintiff served these requests by electronic mail on March 29, 2008. Pursuant to the Federal Rules of Civil Procedure, when discovery requests are served electronically, an additional three days are added to the time in which the recipient is allowed to respond. Fed. R. Civ. P. 5(b)(2)(B) and Fed. R. Civ. P. 6(d). Accordingly, defendants' responses to these requests were not due until May 1, 2008, one day after the close of discovery. Defendants are thus not obligated to provide any responses to these requests.

Nevertheless, without waiving the timeliness objection and reserving all rights related thereto,

defendants are providing the following responses.

**DOCUMENT REQUEST NO. 1:** All documents relating to applicant flow data for the

promotion of minorities by Defendants as described in Wendy Soubel's November 14, 2007 30

(b)(6) deposition on page 39 at lines 13-25.

**RESPONSE:** Pursuant to the Protective Order entered by the Court in this matter, Defendants will make available for inspection and copying at a time and place convenient to the parties any responsive documents they may have in their possession, custody or control.

**DOCUMENT REQUEST NO. 2:** All documents, including personnel files and any

other files concerning all individuals identified in Defendants' response to Interrogatory No. 1 of

Plaintiff's Second Set of Interrogatories to Defendant.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks the production of "any . . .files concerning" the individuals identified in response to the interrogatory at issue. Defendants further object to this request to the extent it fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, defendants will make available for inspection and copying at a time and place convenient to the parties personnel files and any files maintained by the individual's supervisor with regard to the individuals identified, if any, in response to Interrogatory No. 1. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 3:** All documents, including personnel files and any

other files concerning all individuals identified in Defendants' response to Interrogatory No. 3 of

Plaintiff's Second Set of Interrogatories to Defendant.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks the production of "any . . .files concerning" the individuals identified in response to the interrogatory at issue. Defendants further object to this request to the extent it fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, defendants will make available for inspection and copying at a time and place convenient to the parties personnel files and any files maintained by the individual's supervisor with regard to the individuals identified, if any, in response to Interrogatory No. 3. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 4:** All documents, including personnel files and any

other files concerning all individuals identified in Defendants' response to Interrogatory No. 4 of

Plaintiff's Second Set of Interrogatories to Defendant.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks the production of "any . . .files concerning" the individuals identified in response to the interrogatory at issue. Defendants further object to this request to the extent it fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, defendants will make available for inspection and copying at a time and place convenient to the parties personnel files and any files maintained by the individual's supervisor with regard to the individuals identified, if any, in response to Interrogatory No. 4. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 5:** All documents, including personnel files and any

other files concerning all individuals identified in Defendants' response to Interrogatory No. 12

of Plaintiff' s Second Set of Interrogatories to Defendant.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks the production of "any . . .files concerning" the individuals identified in response to the interrogatory at issue. Defendants further object to this request to the extent it fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, defendants will make available for inspection and copying at a time and place convenient to the parties personnel files and any files maintained by the individual's supervisor with regard to the individuals identified, if any, in response to Interrogatory No. 12. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 6:** All documents, including personnel files and any

other files concerning all individuals identified in Defendants' response to Interrogatory No. 13

of Plaintiff's Second Set of Interrogatories to Defendant.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks the production of "any . . .files concerning" the individuals identified in response to the interrogatory at issue. Defendants further object to this request to the extent it fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, defendants will make available for inspection and copying at a time and place convenient

to the parties personnel files and any files maintained by the individual's supervisor with regard to the individuals identified, if any, in response to Interrogatory No. 13. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 7:** All documents, including personnel files and any

other files concerning all individuals identified in Defendants response to Interrogatory No. 14 of

Plaintiff's Second Set of Interrogatories to Defendant.

**RESPONSE:** Defendants object to this request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks the production of "any . . .files concerning" the individuals identified in response to the interrogatory at issue. Defendants further object to this request to the extent it fails to describe the requested documents with reasonable particularity. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, defendants will make available for inspection and copying at a time and place convenient to the parties personnel files and any files maintained by the individual's supervisor with regard to the individuals identified, if any, in response to Interrogatory No. 14. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 8:** A copy of all 30-day Reminder Notices sent to any

employee between January 1999 and December 2005 for aging Captura expense reports.

**RESPONSE:** Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks copies of notices to "any employee" over a six-year period, including employees who are not similarly situated to plaintiff, in that GM has thousands of employees who utilize the Captura expense reporting system. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, GM will make available for inspection and copying at a time and place convenient to the parties responsive documents regarding employees who are similarly situated to plaintiff in its possession, custody or control, or that it is reasonably able to obtain through the Captura or Lotus Notes systems. Defendants also refer plaintiff to responsive documents previously produced in this matter.

**DOCUMENT REQUEST NO. 9:** A copy of all 60-day Reminder Notices sent to any

employee between January 1999 and December 2005 for aging Captura expense reports.

**RESPONSE:** Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant evidence to the extent it seeks copies of notices to "any employee" over a six-year period, including employees who are not similarly situated to plaintiff, in that GM has thousands of employees who utilize the Captura expense reporting system. Subject to and without waiving these objections, and pursuant to the Protective Order entered by the Court in this matter, GM will make available for inspection and copying at a time and place convenient to the parties responsive documents regarding employees

-4-

**B**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  SOUTHERN DISTRICT OF OHIO

 3                      WESTERN DIVISION

 4

 5    AL WASHINGTON,                    )

 6                      Plaintiff,      )

 7         vs.                          ) Case No. 1:06-cv-631

 8    GENERAL MOTORS CORP., et al.,)

 9                      Defendants.     )

10

11

12

13              The videotaped deposition of

14    LARRY DAVID SPEICHER, called for examination

15    pursuant to the Rules of Civil Procedure for the

16    United States District Courts pertaining to the

17    taking of depositions, at 225 West Wacker Drive,

18    Suite 3000, Chicago, Illinois, on the 17th day of

19    April 2008, at the hour of 10:28 a.m.

20

21

22

23    Reporter:  Kim Bures, CSR, RMR, CRR, CBC, CCP.

24    Illinois CSR License No.:  084-003292.
```

1          THE COURT REPORTER: My name is Kim Bures, from

2    McCorkle Court Reporters.

3                    (Witness sworn.)

4                    LARRY DAVID SPEICHER,

5    called as a witness herein, having been first duly

6    sworn, was examined and testified as follows:

7                    EXAMINATION

8    BY MR. CIOFFI:

9        Q.   Please state your full name.

10       A.   Larry David Speicher.

11       Q.   Your business and residence address

12   please?

13       A.   Business address is Suite 300E, 387 Shuman

14   Boulevard, Naperville, Illinois, 60563.   Residence

15   is 1812 Auburn Avenue, Naperville, Illinois, 60565.

16       Q.   Have you ever had your deposition taken

17   before?

18       A.   No, I have not.

19       Q.   Do you understand the process?

20       A.   Somewhat.

21       Q.   There is a legal action pending in the

22   Southern District of Ohio of the United States

23   District Court.   You're aware of that; is that

24   correct?

1    the results at the end of the year.  My

2    understanding of a PMP is that the final in

3    December is a record that goes in the personnel

4    folder, that the midyear is a discussion document,

5    that you have discussions with the individual.

6        Q.    So the final PMP should be in the

7    personnel folder, correct?

8        A.    Correct.

9        Q.    Can you explain to me -- we requested in

10   this case your personnel folder, and it contains no

11   PMPs.  Can you explain that to me?

12       A.    No.  I don't know; I don't know.  I cannot

13   answer that.

14       Q.    But the PMPs should be in there if we

15   received the complete personnel file, shouldn't

16   they?

17       A.    I don't know.

18       Q.    Well, you just said they were put in the

19   personnel file, correct?

20       MR. VOGEL:  I'm going to object to the extent

21   it misstates his testimony.

22            But you can answer.

23       MR. CIOFFI:  I don't think the court's going to

24   have any trouble interpreting this.

C

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  SOUTHERN DISTRICT OF OHIO

 3                      WESTERN DIVISION

 4

 5   AL WASHINGTON,                  )

 6           Plaintiff,              )

 7           -vs-                    )  No. 1:06-cv-631

 8   GENERAL MOTORS CORP., et al.,)

 9           Defendants.             )

10           The videotaped deposition of ROY PIKUS

11   called for examination pursuant to Notice and

12   the Rules of Civil Procedure for the United

13   States District Courts pertaining to the taking

14   of depositions, taken before Gina Callahan, a

15   notary public within and for the County of

16   Iroquois and State of Illinois, at 225 West

17   Wacker Drive, Chicago, Illinois, on the 18th day

18   of April, 2008, at the hour of 9:33 a.m.

19

20

21

22

23

24
```

```
 1        THE VIDEOGRAPHER:  Will the court reporter    09:36AM

 2   please identify herself and swear in the        09:36AM

 3   witness.                                          09:36AM

 4        THE REPORTER:  My name is Gina Callahan with

 5   McCorkle Court Reporters.

 6                    (Whereupon, the witness was duly

 7                     sworn.)

 8                    ROY PIKUS,

 9   having been first duly sworn, was examined and

10   testified as follows:

11                    EXAMINATION                      09:36AM

12   BY MR. CIOFFI:                                    09:36AM

13        Q.   State your full name.                   09:36AM

14        A.   Roy Pikus.                              09:36AM

15        Q.   Your residence and business address,    09:36AM

16   please.                                           09:36AM

17        A.   Residence is 111 Settlers Drive,        09:36AM

18   Naperville, Illinois.                             09:36AM

19        Q.   Business address?                       09:36AM

20        A.   Is 387 Shuman Boulevard, Naperville,    09:36AM

21   Illinois.                                         09:36AM

22        Q.   Describe for me your employment history 09:36AM

23   before General Motors and at General Motors.      09:37AM

24        A.   Actually, I've worked for General       09:37AM
```

| 1 | A. Yes. | 11:13AM |
| 2 | Q. Okay. And again, we asked for | 11:13AM |
| 3 | Mr. Speicher's personnel file but no PMPs are in | 11:13AM |
| 4 | there. | 11:13AM |
| 5 | A. I do not believe in the course of | 11:13AM |
| 6 | discovery I was requested. I can't recollect | 11:14AM |
| 7 | either if David or O.J. Atkins had asked me to | 11:14AM |
| 8 | submit Larry Speicher's personnel file. | 11:14AM |
| 9 | Q. Well, who maintained -- | 11:14AM |
| 10 | A. I don't think they did that. | 11:14AM |
| 11 | Q. Who maintains within GM, what is the | 11:14AM |
| 12 | policy, who maintains the personnel file? | 11:14AM |
| 13 | A. The immediate supervisor. | 11:14AM |
| 14 | Q. And that's the only personnel file | 11:14AM |
| 15 | that's maintained on the employee? | 11:14AM |
| 16 | A. From an operating standpoint, meaning | 11:14AM |
| 17 | I'm from a supervisory standpoint. I really | 11:14AM |
| 18 | don't know what files are maintained by the HR | 11:14AM |
| 19 | department. I don't know what HR has, like O.J. | 11:14AM |
| 20 | would have, in terms of -- I think most of their | 11:14AM |
| 21 | HR files are electronic. I am not sure. | 11:14AM |
| 22 | Q. Is it GM policy that the PMPs go into | 11:14AM |
| 23 | the personnel file? | 11:14AM |
| 24 | A. Yes. | 11:14AM |

| | | |
|---|---|---|
| 1 | Q. So you would expect in every personnel | 11:14AM |
| 2 | file to have all of the employees' PMPs, | 11:15AM |
| 3 | wouldn't you? | 11:15AM |
| 4 | A. There should be a xerox copy of the | 11:15AM |
| 5 | file, the PMP, and there should be a copy of the | 11:15AM |
| 6 | PMPs in HR's file. Again, that's an annual | 11:15AM |
| 7 | activity. | 11:15AM |
| 8 | Q. That's a very important function | 11:15AM |
| 9 | vis-a-vis the employee and General Motors; isn't | 11:15AM |
| 10 | that right? | 11:15AM |
| 11 | A. Yes. Uh-huh. | 11:15AM |
| 12 | Q. Any other complaints from John? | 11:15AM |
| 3 | A. I could recall the two instances, yeah; | 11:15AM |
| 14 | one was on the phone and the other was face to | 11:15AM |
| 15 | face. | 11:15AM |
| 16 | Q. Who is the next person who complained | 11:15AM |
| 17 | about Mr. Speicher? | 11:15AM |
| 18 | A. Rich Kruzell, who is currently a | 11:15AM |
| 19 | commercial sales manager on the staff. He | 11:15AM |
| 20 | had -- he covers Michigan and Indiana. | 11:15AM |
| 21 | Q. And what was his complaint? | 11:15AM |
| 22 | A. Pretty much the same complaint. Too | 11:15AM |
| 23 | much check sheet, you know, what I'll call | 11:15AM |
| 24 | tactical activities are getting in the way of us | 11:15AM |

**D**

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


AL WASHINGTON,

          Plaintiff,

vs.               Case No. 1:06-cv-631

                    Judge Beckwith

                    Magistrate Judge Black

GENERAL MOTORS CORPORATION,

et al.,

          Defendants,

_____/

PAGE 1 TO 54


    The 30(b)(6) Deposition of General Motors

       Corporation through JOHN R. CRYER,

    Taken at 400 Renaissance Center, 23rd Floor

    Detroit, Michigan,

    Commencing at 11:40 a.m.,

    Wednesday, November 14, 2007,

    Before Cynthia Ann Chyla, RPR, CSR 0092.

1    Detroit, Michigan

2    Wednesday, November 21, 2007

3    About 11:40 a.m.

4                     JOHN R. CRYER,

5    having first been duly sworn, was examined and

6    testified on his oath as follows:

7    EXAMINATION BY MR. CIOFFI:

8        Q.    Please state your full name and residence

9    and business addresses.

10       A.    My name is John R. Cryer.  My address is

11   Tower 300, I don't know the mail code, the Renaissance

12   Center, Detroit, Michigan.

13       Q.    And your residence address?

14       A.    My home address?

15       Q.    Yes, please.

16       A.    23607 Paddock Drive, Southfield, Michigan --

17   I'm sorry, Farmington Hills, Michigan.

18       Q.    Mr. Cryer, by whom are you employed?

19       A.    General Motors Corporation.

20       Q.    How long have you been employed by General

21   Motors?

22       A.    I'm going into 35 years.

23       Q.    Youthful group of employees here.  Must be

24   something in the water.

25                     Have you in your capacity as an

1     -- resides with the VSSM HR here in Detroit.

2          Q.    And who, who specifically?

3          A.    What HR rep?

4          Q.    Yes.

5          A.    I could not answer that.

6          Q.    Do you know the HR people at General Motors

7     here in Detroit who are assigned to VSSM?

8          A.    I know them, yes.

9          Q.    Who are they?

10         A.    HR and managers and directors?

11         Q.    To the best of your knowledge, yes.

12         A.    The head of that organization is Priscilla

13    Archangel. Beneath her resides Andrea Ebbitt and Wendy

14    Soubel, and then they have a structure underneath them.

15         Q.    About how many are there assigned to VSSM?

16         A.    In HR?

17         Q.    Right.

18         A.    This would only be a guess. I would say

19    somewhere in the neighborhood of 15 to 20.

20         Q.    How many HR personnel are there overall here

21    in Detroit?

22         A.    I have no idea.

23         Q.    Who would have possession, then, of

24    Mr. Washington's PMPs?

25         A.    At this point in time?

1   Q.   Um-hmm.

2        A.   My assumption is they would have been in the

3   personnel file because he is a terminated employee.

4        Q.   Do you have an explanation as to why it's

5   not in that personnel file?

6        A.   No, I don't.

7        Q.   Would it be unusual for the PMPs of a

8   terminated employee not to be in the personnel file?

9        A.   In my professional opinion, yes.

10       Q.   If they're not in the personnel file here in

11  Detroit, where would they be?

12       A.   I have no idea.

13       Q.   You mentioned that they might be with the

14  leader, his immediate supervisor; is that possible?

15       A.   But I believe, I believe in VSSM the HR

16  files are maintained in Detroit.

17       Q.   And that's just a function decision?

18       A.   That is correct.

19       Q.   Who's O.J. Adkins, do you know him?

20       A.   O.J. Adkins is a field HR manager.

21       Q.   Does he keep personnel files of VSSM

22  employees?

23       A.   Not to my knowledge.  I think all the files,

24  as I reiterate again, are maintained in Detroit.

25       Q.   As you look through GM001 through 61,

E

# Personnel Files – Materials Included and Excluded

## 109.3 Employee Access Personnel Files

Employees are permitted to review their personnel files. If such files are off-site, reasonable accommodation will be made to allow employees to inspect their files. To request access, employees must complete the "Request to Inspect Personnel Records" (Exhibit 1-B). Prior to inspection, Human Resource Representatives are responsible for reviewing the files to insure compliance with Sections 109.4 and 109.5 of this policy.

Following review, copies of any documents contained in the files will be provided to employees upon their request.

**↑Top**

## 109.4 Items Included in Personnel Files

The following list is illustrative of items that are to be included in personnel files:

- Applications for employment and any related documents authorizing a change in status, compensation, classification, transfer, or promotion.

- Performance Management Process (PMP) or other similar performance evaluation documents will be retained by the employee's supervisor or placed in employees' personnel file in accordance with local practice. (Note: These documents should be passed on to the new leader in the event of a change in supervision.)

- Summary sheets of assessment processes.

- Formal notices of warning, suspension, discipline, or termination.

- Record changes regarding date of hire, length of service date, date of birth, and others.

- Notices of union requirements, membership, dues check-off, etc.

- Any document recording a significant event involving an employee, that should properly be made a part of the employee's record.

**↑Top**

## 109.5 Items Not Included in Personnel Files

The following list is illustrative of items that are not to be included in personnel files or subject to inspection by employees, except as required by law:

- Security investigations records that should be maintained separate from employees' personnel records.

- Employment reference letters or memos of phone reference checks.

- Grievance, Open Door and EEO investigation records or any investigative reports.

- Reports prepared in connection with litigation to which the employee is a party or that contain confidential information about another employee.

- Medical reports and records.

- Disability claim records such as sickness and accident records, and workers' compensation records.

- Staff planning documents that relate to individuals in addition to the reviewing employee.

- Records containing confidential information about another employee.

- Notes or memoranda about an individual kept by a leader (such as a "leaders notebook"), that are not shared with anyone else in the organizatione.

- Information required by the Immigration and Naturalization Service (I-9 forms). These forms should be retained in a file separate from employees' personnel files.

GM03698

F

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


AL WASHINGTON,

          Plaintiff,

vs.                Case No. 1:06-cv-631

                      Judge Beckwith

                      Magistrate Judge Black

GENERAL MOTORS CORPORATION,

et al.,

          Defendants,

_____/

PAGE 1 TO 73


    The 30(b)(6) Deposition of General Motors

       Corporation through DEBORAH VOYT,

    Taken at 400 Renaissance Center, 23rd Floor

    Detroit, Michigan,

    Commencing at 9:55 a.m.,

    Wednesday, November 14, 2007,

    Before Cynthia Ann Chyla, RPR, CSR 0092.

1    Detroit, Michigan

2    Wednesday, November 14, 2007

3    About 9:55 a.m.

4         DEPOSITION EXHIBIT 1

5         Notice of Rule 30(B)(6) Deposition

6         WAS MARKED BY THE REPORTER

7         FOR IDENTIFICATION.

8                        DEBORAH VOYT,

9    having first been duly sworn, was examined and

10   testified on her oath as follows:

11   EXAMINATION BY MR. CIOFFI:

12        Q.    Please state your full name and your

13   business and residency addresses, please.

14        A.    Deborah Voyt.  I work at the Renaissance

15   Center for General Motors, 300 Renaissance Center,

16   Detroit, Michigan 48265.

17                        My personal residence as well?

18        Q.    Yes, ma'am?

19        A.    3867 Oakland Drive, Bloomfield Hills,

20   Michigan.

21        Q.    Where are you employed?

22        A.    General Motors.

23        Q.    How long have you been employed at General

24   Motors?

25        A.    Thirty years.

1      Q.     And you describe that as a -- I've forgotten
2    the term -- market rate?

3      A.     Um-hmm.

4      Q.     What is that term that is used within
5    General Motors that you articulated a little bit
6    earlier?  Market rate driven, the market rate --

7      A.     The market rate is the rate of pay.  Again,
8    first of all, it's a rate of pay, an aggregate of all
9    the functions and all the jobs that would fall, for
10   example, in a level 6 with that level of
11   responsibility, and jobs that were to be determined to
12   be a level 6, go out and look at the data and establish
13   a market rate based upon just the general what the
14   market would pay for the positions at that level of
15   responsibility.  It is somewhere between the minimum
16   and the maximum of the range.

17     Q.     Am I correct to understand that there is a
18   set of criteria which instructs the line manager, the
19   person making the decision about particular pay
20   increases, to move towards the middle or the midpoint
21   or the mean, or are there criteria that a manager would
22   consult to determine whether he or she was moving an
23   employee to that midpoint?

24     A.     Well, that's our philosophy.  So --

25     Q.     Is the philosophy in writing somewhere?

1     A.    I think on our website, actually on our comp
2     drive website.
3           Q.    Is it communicated in a memorandum or some
4     other instruction to line managers on how they're
5     supposed to adjust within this market rate concept?
6           A.    Well, I'm not -- today we have a system, you
7     know, an on-line -- a tool that would, based upon --
8     strictly upon an employee's position and range and
9     based upon the size of the fund would make an initial
10    determination.
11          Q.    What's that tool called?
12          A.    It's our E-comp tool today, but I'm not
13    certain if it was in existence --
14          Q.    When did it come into existence?
15          A.    We've been evolving it over the past
16    two years.
17          Q.    What did it evolve from?
18          A.    A similar type tool, but, again, we've had a
19    system, a comp planning tool to facilitate that
20    initial, you know, recommendation.
21                      So I think comp planning tool would
22    be what we refer to.
23          Q.    So you look -- you articulate this comp
24    planning tool.  What other tools would the line manager
25    have at his or her disposal in making the salary

1    determinations for a particular employee?

2        A.    That would be all that we would provide to

3    them.  You know, again, back to the line organization,

4    they all look at contribution and performance, slightly

5    different ways within our framework, so the PMP

6    process, performance to objectives.  I can't speak

7    specifically to all of the functional areas.

8        Q.    Generally speaking, is the most important

9    criterion performance to objective?

10       A.    Well, the two factors come into play, so,

11   you know, if you're already paid well above what the

12   market would pay you for the job that you're doing and

13   your contribution and performance was not exceptional,

14   and those are my words, but not above and beyond and

15   exceeding your expectations, then you would be expected

16   -- it would be expected that your pay would -- you

17   know, you have smaller increases, you know, than

18   someone who were lower in the range with equal

19   performance, again trying to drive back to that market

20   rate of pay.

21       Q.    Who reviews the compensation decisions by a

22   line manager?

23       A.    That will vary based upon function.  So, the

24   line manager in some cases it would go up to the HRM.

25   You know, I'm not -- it depends.

G

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


AL WASHINGTON,

      Plaintiff,

vs.               Case No. 1:06-cv-631

                   Judge Beckwith

                   Magistrate Judge Black

GENERAL MOTORS CORPORATION,

et al.,

      Defendants,

_____/

PAGE 1 TO 73


    The 30(b)(6) Deposition of General Motors

      Corporation through DEBORAH VOYT,

    Taken at 400 Renaissance Center, 23rd Floor

    Detroit, Michigan,

    Commencing at 9:55 a.m.,

    Wednesday, November 14, 2007,

    Before Cynthia Ann Chyla, RPR, CSR 0092.

1    Detroit, Michigan

2    Wednesday, November 14, 2007

3    About 9:55 a.m.

4         DEPOSITION EXHIBIT 1

5         Notice of Rule 30(B)(6) Deposition

6         WAS MARKED BY THE REPORTER

7         FOR IDENTIFICATION.

8                        DEBORAH VOYT,

9    having first been duly sworn, was examined and

10   testified on her oath as follows:

11   EXAMINATION BY MR. CIOFFI:

12        Q.   Please state your full name and your

13   business and residency addresses, please.

14        A.   Deborah Voyt.  I work at the Renaissance

15   Center for General Motors, 300 Renaissance Center,

16   Detroit, Michigan 48265.

17                        My personal residence as well?

18        Q.   Yes, ma'am?

19        A.   3867 Oakland Drive, Bloomfield Hills,

20   Michigan.

21        Q.   Where are you employed?

22        A.   General Motors.

23        Q.   How long have you been employed at General

24   Motors?

25        A.   Thirty years.

1    would be comp planning time.  You know, that's how we

2    want to see how people are spending their money, you

3    know, on an aggregate level.

4          Q.    You've used this term a couple of times and

5    I want to understand it, the comp planning, the comp

6    planning time.  Describe that process to me.

7          A.    Um-hmm.

8          Q.    And specifically just so I can have a

9    concrete example, how would it work, let's say, with

10   respect to VSSM?

11         A.    Wendy could more specifically tell you about

12   VSSM.  I can tell you about the timing in general, you

13   know, how it would work, and that is once we have a

14   compensation budget approved, we would, you know, then

15   alert the organizations.  We would ask them to begin

16   to, you know, look at their employees, identify who

17   their high performers would be, identify people who

18   would not be high performers or people who are going to

19   have performance issues that might be on a performance

20   improvement plan or some kind of plan to try to improve

21   their performance.

22         Q.    Is that, that process you just described, is

23   that something before or after your compensation

24   planning?

25         A.    That would be right at the beginning.  So

1    alerting the organization, begin your discussions,
2    we're going to have a comp plan, we're going to deliver
3    you the worksheets. And, again, worksheets are on
4    line, we're kind of in transition. In that worksheet
5    we'll have those people you've identified as being high
6    performers and those people who have performance
7    issues.

8         Q.    And does each function within the company
9    prepare those worksheets for the compensation planning?
10        A.    They would receive those worksheets from us
11   with the starting point once they've determined what
12   the performance -- high performer or not with position
13   and range, and then, you know, kind of a starting point
14   of where compensation would be based upon the two
15   factors.

16        Q.    Right. Okay.

17                    And is that done on an annual basis?

18        A.    No. We wish.

19        Q.    How frequently is it done?

20        A.    Depending on business factors, our hope is
21   it would be an annual process, but sometimes it can be
22   24 months, 27 months, based upon business conditions.

23        Q.    And how long has the company done
24   compensation planning in that manner as you just
25   described it?

1    A.    Five or six years.

2    Q.    So go back at least to 1999 or so?

3    A.    Yes.

4    Q.    Was there a system beforehand?

5    A.    Yes, there was.  It was a similar system,

6    much more cumbersome, but, yes.  System -- again, that

7    that system driven starting point, position and range,

8    and then amount of fund.

9    Q.    By the way, we have been discussing

10   functions and you described the functions --

11   A.    Yeah.

12   Q.    -- or I'll just call it divisions within

13   General Motors.

14   A.    Functional areas.

15   Q.    Functional areas.

16   A.    Um-hmm.

17   Q.    Was there a transition to that organization

18   of the company at some point in time?

19   A.    We've been in transition I think for

20   10 years, so ....

21   Q.    A good company is always evolving.  What was

22   the prior organizational structure?  Was it by products

23   or was there something like a Pontiac Division or a

24   Chevrolet Division?

25   A.    We have had that structure.

H



## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AL WASHINGTON,                          )    Case No. 1:06CV631
                                        )
    Plaintiff,                          )
                                        )
v.                                      )
                                        )
GENERAL MOTORS CORPORATION,             )
et al.,                                 )
                                        )
    Defendants.                         )
                                        )
                                        )

## DEFENDANTS' PRIVILEGE LOG

Defendants General Motors Corporation, Larry Speicher and Roy Pikus, pursuant to Fed.

R. Civ. P. 26(b)(5), offer the following privilege log that reflects information withheld subject to

the work product privilege that may otherwise be responsive to Plaintiff's First, Second and

Third Requests for Production of Documents served in this matter:

| DOCUMENT DESCRIPTION | DATE PREPARED | DOCUMENT PREPARER | PURPOSE OF DOCUMENT | NUMBER OF PAGES | BASIS OF PRIVILEGE |
|---|---|---|---|---|---|
| Handwritten notations made on Complaint and EEOC Charge Documents | On or about December 7, 2005 | Roy Pikus and Larry Speicher | Response to EEOC Charge prepared in anticipation of litigation. | 64 pages | Work-Product |

Respectfully submitted,

David C. Vogel (Mo. Bar No. 45937)
**(Admitted Pro Hac Vice)**
Lathrop & Gage L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Telecopier: (816) 292-2001

Michael S. Glassman
Dinsmore & Shohl
1900 Chemed Center
225 E. Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8255
michael.glassman@dinslaw.com

ATTORNEYS FOR DEFENDANTS

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was served via U.S. First Class

mail, postage prepaid, on the following this 30th day of April, 2008, addressed as follows:

Nathaniel R. Jones
Michael L. Cioffi
William Huse
Blank Rome LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202

Attorneys for Plaintiff

An Attorney for Defendants

3