UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AL WASHINGTON, | ) | Case No. 1:06-cv-631 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Beckwith |
| | ) | Magistrate Judge Black |
| v. | ) | |
| | ) | |
| GENERAL MOTORS CORP., et al, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF AL WASHINGTON'S MOTION FOR ADVERSE INFERENCE INSTRUCTIONS AND OTHER SANCTIONS

Plaintiff Al Washington, by and through his undersigned counsel, respectfully submits this motion, and memorandum in support thereof, for an adverse inference instruction and other sanctions against Defendants, and states as follows:

**I.  Introduction**

This is a failure to promote and wrongful discharge employment case. As detailed more fully in Plaintiff's Motion to Compel[1], Plaintiff served a number of document requests, and the parties came to subsequent mutual agreements, that required the production of performance evaluations (called PMPs within General Motors) and other performance-related metrics of Mr. Washington and similarly situated employees, along with all sales data relating to Mr. Washington.

Plaintiff served the document requests on Defendants in May 2007, January 2008 and March 2008, in an effort to seek out these highly relevant and clearly discoverable documents, which are vital for Plaintiff to fully develop the claims in this action. In response, Defendants

---
[1] Doc. no. 36, filed on May 15, 2008.

produced a mass of nearly 5,000 documents in eight separate productions, each of which patently violated Fed. Civ. P. R. 34, as the documents were not produced in the ordinary course of business or labeled to identify the requests to which the documents were responsive.[2] Mixed in with these several productions were some responsive documents such as PMPs for Mr. Washington and several other employees; however, Defendants' productions were, and remain, grossly incomplete. For instance, no performance evaluations were produced for Mr. Washington prior to 1999 and only a smattering of PMPs were produced for similarly situated employees. In addition, GM has produced less than 25 pages of sales data for Mr. Washington, which is remarkable in light of Mr. Washington's 25 years of service.

After repeated requests to Defendants to supplement their clearly inadequate production, Plaintiff ultimately moved to compel the Defendants' responses to the discovery requests, including the production of a complete set of PMPs for the requested employees and all sales data for Mr. Washington. The Court held a telephone hearing on the Motion to Compel on June 20, 2008 whereby Defendants' counsel represented that Defendants are no longer in possession of the missing PMPs and sales data and are, therefore, unable to produce them. In light of the Defendants' failure to retain vital documents related to this litigation, this Motion requests that the Court impose adverse inference instructions and other appropriate sanctions in an effort to level the playing field and maintain the fairness of the litigation.

---

[2] Producing documents "as they are kept in the usual course of business" entails allowing a party access to the requested documents where they are normally kept (as opposed to sending the documents to the requesting party). On the other hand, if a party chooses to send the documents to the requesting party, the documents must be organized and labeled corresponding with the categories in the request. In this case, Defendants chose to send the documents and failed to organize and label them to correspond with the categories in the request.

II.     **Argument**

   A.     **Defendants Failed To Maintain Key Documents Related To This Litigation Which They Were Under A Duty To Preserve**

It is a basic tenet of law that "the duty to preserve relevant evidence commences prior to the filing of the action, once the defendant reasonably anticipates an action may be forthcoming." *King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, 448 F.Supp. 2d 876, 878 (S.D. Ohio 2006). While a party is not under a duty to retain every document in its possession, "it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence . . . and is reasonably likely to be requested during discovery." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) quoting *William T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1445 (C.D. Cal. 1984).

In the present case, Plaintiff filed a Charge of Discrimination with the EEOC on December 7, 2005 and served it upon General Manager Jim Bunnell, Defendant Speicher, Defendant Pikus, and Oliver Adkins and Kathleen Barclay of GM's Human Resources Department by facsimile on the same day. The next day, December 8, 2005, Plaintiff then sent out document retention notices to the same individuals that stated, in part:

> As a result of this notice, you are to preserve any and all documents, including, but not limited to, electronic documents and communications, **sales reports**, customer files, **employee evaluations**, expense reports, assignment logs, corporate policies, regional policies, office policies, office memoranda, emails, notes (handwritten and otherwise), and all human resources documents.[3]

(emphasis added).

Hence, there can be no doubt that the Defendants were apprised, and put on sufficient notice, of their duty to preserve all relevant documents related to this litigation, including all

---

[3] Copies of the document retention notices are attached hereto as Exhibit A.

"employee evaluations" and "sales reports," as of (at the very latest) December 8, 2005. However, Plaintiff's notices apparently went unheeded as the Defendants, by their own admission, failed to retain documents that they were specifically requested to retain, e.g., PMPs and sales data. In their Brief in Opposition to Plaintiff's Motion to Compel, Defendants "concede that they have been unable to locate employee PMPs for various years," and have also "exhausted all avenues to locate information regarding plaintiff's sales data and produced all documents they were able to locate."[4]

Unfortunately, the Defendants' allegedly exhaustive search for these documents resulted in less than 25 pages of sales data relating to Mr. Washington (an employee of GM for 25 years) and relatively few of the PMPs requested. The chart below summarizes the Defendants' incomplete production of PMPs for the employees requested by Plaintiff:[5]

| Employee | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|---|---|---|
| Speicher | | | | | X | X | X | X | |
| Pikus | | | | | | | | | |
| Bunnell | | | | | | | | | |
| Washington | | X | X | X | X | X | | | |
| J. Meyer | | | | | | | | | |
| E. Raich | | X | X-mid | X | X | X | X | X | |
| L.V. Turner | | X | X-mid | X | X | X | X | X | |
| J. Haag | | | | | | | X | X | X |
| C. Forsythe | | | X | X | X | X | X | | |
| L. Turner[6] | | X | X | | | | | | |
| J. Riley | | | X | | | | | | |
| K. Kelly | | | X | | | | | | |

---

[4] Defendants' Brief in Opposition to Plaintiff's Motion to Compel, Doc. no. 40, pp. 5 & 7.
[5] GM conducts employee evaluations twice yearly, a mid-term and a final. "X" means that both the mid-term and the final evaluation for that year were produced by the Defendants for that individual. "X-mid" means that only the employee's mid-year evaluation was produced by the Defendants, and not the final evaluation.
[6] Mr. Turner was no longer employed by GM after 2001.

4

| Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| R. Nathan | X | X | | | | | | | |
| J. Mellon | | | | X | | | X | | |
| D. Dittrich | X | X | | X | X | X | X | X-mid | |
| D. Haselhorst | X | X | | | X | X | | | |
| B. Lawler | X | X | X-mid | X | X | X | X | X | |
| B. Perkins | | | | | | | | | |
| J. Jenkins | | | | | | X | X | | |

As the chart illustrates, GM's severely deficient production creates an appearance of impropriety. It strains the boundaries of credibility to believe that a major American corporation such as GM, which measures company and employee success by performance and sales volumes, misplaced or destroyed such a sizeable amount of critical performance metrics and sales data. The Defendants' failure to maintain such key documents threatens the reliability of the fact-finding process and prevents this case from being decided on its merits after a consideration of all relevant evidence bearing on Plaintiff's claims. Therefore, an award of sanctions is an appropriate remedy.

> **B. The Court Should Award Adverse Inference Instructions And Preclude Defendants From Putting Forth Any Evidence Alleging Deficient Performance By Plaintiff**

The missing evidence that Defendants failed to produce is highly relevant to Plaintiff's claims, and it is unacceptable for a party to be permitted to jeopardize the integrity of the discovery process by failing with impunity to produce key documents that should be in their possession. As such, leveling the playing field and creating fairness by imposing adverse inferences when such evidence is missing is a generally accepted principle of law. *Welsh v. U.S.*, 844 F.2d 1239, 1246 (6th Cir. 1988). Federal Courts have inherent power to impose sanctions, such as adverse inferences, for discovery misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32

5

(1991); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 513 (6th Cir. 2002). The Sixth Circuit has recognized that "[w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." *Clay v. UPS*, 501 F.3d 695, 712 (6th Cir. 2007) (holding that the Defendant's failure to turn over documents creates an adverse inference in the Plaintiff's favor).

GM clearly had possession and control over its PMPs and sales data, and was expressly notified that these specific documents should be retained. Nevertheless, GM claims to have somehow lost, or conveniently destroyed, the missing PMPs and sales data, which severely prejudices Plaintiff and his ability to meet his burden of proof and establish a prima facie case. Employment discrimination cases often turn on the employer's alleged reason for terminating the employee, and in this case, the Defendants claim that Mr. Washington's performance deteriorated and that similarly situated employee's were treated no differently. However, the record thus far demonstrates the opposite, and the additional documents which Defendants are failing to produce would further demonstrate that Mr. Washington's performance was as good as or better than similarly situated white employees who were not terminated. It is exactly this type of prejudicial failure to maintain and/or produce relevant documents relating to the Plaintiff and "comparables" which warrants an adverse inference instruction. *See Sauer v. Univ. Internal Medicine Assoc., Inc.*, 2008 U.S. Dist. LEXIS 20725, *22 (S.D. Ohio 2008) (holding that Plaintiffs were entitled to an adverse inference due to Defendant's failure to provide requested information relating to 'comparables').

The Defendants' failure to maintain the most basic and vital documents related to this litigation should not be tolerated, and the Plaintiff urges that Defendants be sanctioned. In order

to maintain the fairness of litigation, Plaintiff respectfully requests that the Court prohibit Defendants from putting forth evidence alleging that Mr. Washington's performance was in any way deficient and that the Court instruct the jury that it must infer the following:

a) The missing PMPs and other performance evaluations of Mr. Washington and similarly situated white employees would be unfavorable to Defendants and would support Plaintiff's position that his performance did not deteriorate between 1999 and 2005 and that he performed better than similarly situated white employees who were not terminated;

b) The missing sales data for Mr. Washington between 1999 and 2005 would be unfavorable to Defendants and would support Plaintiff's position that his performance did not deteriorate between 1999 and 2005 and that he performed better than similarly situated white employees who were not terminated; and

c) Plaintiff's termination was motivated by race and not based on performance-related issues.

**III. Conclusion**

Plaintiff respectfully requests that the Court enter an Order granting his Motion and issue the foregoing proposed adverse inference instructions and to preclude the Defendants from putting forth any evidence of performance decline by Mr. Washington, along with any and all other relief that this Court deems proper.

Respectfully submitted,

BLANK ROME LLP

  /s/ Michael L. Cioffi
Nathaniel R. Jones (0026866)
Michael L. Cioffi (0031098)
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Telephone: (513) 362-8700
Facsimile: (513) 362-8787
jones-n@blankrome.com
cioffi@blankrome.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael S. Glassman, Esq., Counsel for Defendants General Motors, Larry Speicher, and Roy Pikus, and I hereby certify that I have also mailed by United States Postal Service the document to the following:

David C. Vogel, Esq.
Lathrop & Gage, L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108

/s/ William M. Huse
Counsel for Plaintiff